FILED
United States Court of Appeals
Tenth Circuit

July 3, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

HECTOR RENE GARCIA-
ZAMBRANO,

Defendant-Appellee.

No. 07-1261

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 06-cr-00172-WYD)**

---

Daniel S. Goodman, U.S. Department of Justice, Washington, D.C. (Troy A. Eid, United States Attorney, and James R. Boma, Assistant United States Attorney, District of Colorado, with him on the briefs), for Plaintiff-Appellant.

Michael P. Zwiebel (Harvey A. Steinberg with him on the brief), Springer and Steinberg, P.C., Denver, Colorado, for Defendant-Appellee.

---

Before **MURPHY, McKAY**, and **BALDOCK**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendant was indicted on three counts of possession with intent to

distribute certain controlled substances. After conducting a hearing pursuant to

*Franks v. Delaware*, 438 U.S. 154 (1978), the district court granted Defendant's motion to suppress evidence seized from his apartment pursuant to a search warrant, ruling that false statements were recklessly included in the search warrant affidavit and that the affidavit did not support a finding of probable cause once the false statements were excised. The government appeals the court's granting of Defendant's suppression motion. We have jurisdiction over this appeal under 18 U.S.C. § 3731.

## BACKGROUND

At the time the search warrant at issue in this case was executed, Defendant was living in a large apartment complex in Denver. Officer Robert Fitzgibbons of the Denver Police Department was employed in an off-duty capacity as a courtesy officer at the same apartment complex. As a courtesy officer, he patrolled the apartment complex and handled security problems, and in return he was allowed to live in one of the apartment units for a significantly reduced rent.

According to his testimony at the *Franks* hearing, Officer Fitzgibbons was contacted by the manager of the apartment complex on or about April 7, 2006, regarding complaints of a strong odor of marijuana emanating from Defendant's apartment. Officer Fitzgibbons questioned five other apartment employees, who all related similar complaints regarding the frequent smell of marijuana outside of Defendant's apartment. Officer Fitzgibbons testified that these five employees also reported observing heavy pedestrian traffic to Defendant's apartment. On

four occasions between April 7 and April 22, 2006, Officer Fitzgibbons attempted to contact Defendant by knocking on his apartment door. Each time, the officer could smell marijuana coming from Defendant's apartment and could hear noise inside the unit, but no one answered the door.

On April 24, 2006, Officer Fitzgibbons contacted Detective Shawn Saunders of the Denver Police Department and informed him of the situation with Defendant's apartment. Detective Saunders sent another officer to conduct a canine narcotics sniff in the hallway outside of Defendant's unit, but the results of the sniff were inconclusive.

That same day, Detective Saunders prepared a search warrant affidavit for Defendant's apartment. A county court judge authorized the search warrant that day, and Denver police officers then conducted a search of Defendant's apartment, retrieving what was later confirmed to be methamphetamine, ecstacy, and marijuana from the apartment.

Shortly after the search warrant was executed, Officer Fitzgibbons obtained handwritten statements from the six employees of the apartment complex he had previously spoken to, including the apartment manager. In these statements, the employees described smelling the odor of marijuana coming from Defendant's apartment. None of the employees' statements mentioned nonresident pedestrian traffic to Defendant's apartment.

Later that evening, Officer Fitzgibbons prepared a report describing what

others had told him and what he had observed regarding Defendant and his apartment. In his report, Officer Fitzgibbons related that the apartment manager had contacted him over a period of two months regarding the smell of marijuana coming from Defendant's apartment and that he had subsequently received similar information from other apartment employees. Officer Fitzgibbons also explained that he had attempted to contact Defendant about the smell but had been unsuccessful. Officer Fitzgibbons reported observing, on four separate occasions, Defendant enter the apartment complex with another person, who shortly thereafter left without Defendant. Officer Fitzgibbons did not report receiving any complaints of pedestrian traffic to Defendant's apartment.

Detective Saunders obtained an arrest warrant based on the physical evidence found in Defendant's apartment, and Defendant was arrested when he returned to his apartment on the evening of April 24. Defendant was subsequently indicted on three counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841 or aiding and abetting the same in violation of 18 U.S.C. § 2.

Defendant then moved to suppress the evidence seized from his apartment, arguing that the affidavit used to obtain the search warrant contained insufficient information to support a finding of probable cause. The district court held a suppression hearing at which Detective Saunders testified. In his testimony, Detective Saunders referred to Officer Fitzgibbons' police report, which had not

been provided to the defense.  The court ordered Officer Fitzgibbons' report and certain other materials to be released to defense counsel for review and continued the suppression hearing to October 25, 2006.  On that date, Defendant informed the court that he intended to file a motion for a *Franks* hearing, based mainly on inconsistencies between the search warrant affidavit and Officer Fitzgibbons' report.  The court therefore continued the October 25 hearing until it had made a ruling on the request for a *Franks* hearing.

The court subsequently granted the motion for a *Franks* hearing, and the hearing was conducted on March 30, 2007.  Detective Saunders and Officer Fitzgibbons testified for the government; Defendant presented no witnesses.  At the end of the *Franks* hearing, the government requested that the court continue the hearing and allow the government to reopen its case-in-chief so that it could elicit testimony from the apartment manager.  The court denied this request, finding that the government was on notice as to the substance of the hearing based on the record of the case.[1]

After considering supplemental briefing submitted by both parties, the district court granted Defendant's motion to suppress.  As discussed in more detail below, the district court found that Officer Fitzgibbons and Detective

---

[1] The government has not appealed the court's denial of its request to reopen, nor has it appealed the court's subsequent denial of its motion for reconsideration of that decision.

Saunders acted with reckless disregard for the truth in their preparation of the affidavit. The court then held that, after the false statements were purged, the affidavit did not provide a sufficient basis for a finding of probable cause. The court rejected the government's argument that the good faith exception to the exclusionary rule applied to the execution of the search warrant. The government appeals.

### DISCUSSION

A search warrant must be voided and the fruits of the search suppressed where a court (1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). On appeal, we review de novo the ultimate determination of reasonableness under the Fourth Amendment, but accept the district court's factual findings unless clearly erroneous. *United States v. Avery*, 295 F.3d 1158, 1167 (10th Cir. 2002). Specifically, we review for clear error the district court's findings regarding the truth or falsity of statements in the affidavit and regarding the intentional or reckless character of such falsehoods. *See United States v. Allerheiligen*, 221 F.3d 1353 (table), 2000 WL 1055487, at **3-4 (10th Cir. 2000) (unpublished);

*United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002); *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988). Whether a corrected affidavit supports a finding of probable cause is a question of law that we review de novo. *See United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

The government contests the district court's finding of falsity as to several key statements in the affidavit as well as the court's related finding that these statements were included in the affidavit with reckless disregard for the truth. The government also argues that the district court excised more of the affidavit than was necessary to remove the statements it found to be false. We address in turn each statement the district court found to be false, then address the court's finding that the affidavit was prepared with reckless disregard for the truth.

First, the district court found to be false the affidavit's representation that "Officer Fitzgibbons . . . has been employed by [the apartment complex] for approximately 1½ months." (R. at 305.) The undisputed evidence establishes that Officer Fitzgibbons had actually been employed by the complex since February 2006, and the government does not dispute the district court's finding that this representation in the affidavit was false. Rather, the government argues that the beginning of this sentence, which stated that Officer Fitzgibbons worked for the apartment complex as a courtesy officer, was true and should not have been excised. However, given the lack of any explanation by the government as to how this fact would support a finding of probable cause, we conclude that any

-7-

error in the excision of this sentence was harmless.

Next, the court found the assertion that "[t]he management related that this problem [with the smell of marijuana] has been an ongoing problem for nearly one year" to be false. (R. at 306.) As the district court pointed out, Officer Fitzgibbons testified that the first time he was notified of the problem was on April 7, 2006, less than one month before the affidavit was prepared, and he could not explain this discrepancy. The government argues that the affidavit statement could still be true because Detective Saunders might have obtained this information directly from the apartment manager rather than from Officer Fitzgibbons. However, this contention ignores several contradictory facts in the record, including the government's own concession in its supplemental briefing before the district court that Defendant was not even living in the apartment complex until less than six months before the search warrant was executed.[2] We accordingly see no error in the court's finding that this statement in the affidavit was false.

The government also argues that the district court should have excised only the phrase "for nearly one year" from this sentence because the management did actually relate that there was an ongoing problem with Defendant's apartment.

---

[2] Moreover, both Detective Saunders' testimony and the manager's statement to the police indicated that the manager had first smelled marijuana outside of Defendant's apartment two or three months before the warrant was prepared and executed.

However, we conclude that the district court did not err in excising the entire sentence from the affidavit. In context, it seems clear to us that the purpose of this sentence was to describe the length of Defendant's ongoing criminal activity and, given the falsity of this description, we conclude that it was indeed entirely appropriate for the district court to strike the entire false sentence. Accordingly we, like the district court, will not consider this sentence in our analysis of probable cause.

The next statement at issue asserts that "[w]ithin the last week Officer Fitzgibbons has received at least four complaints from the management about the odor and Officer Fitzgibbons has responded to apartment #230." (R. at 306.) At the *Franks* hearing, Officer Fitzgibbons testified that he made a total of four attempts to contact Defendant between April 7 and April 24, but he could not state "[t]he exact dates or the weeks" of these occurrences. (R. at 265.) Based on his testimony, the district court found this affidavit statement to be false. Our review of the relevant evidence does not leave us "with the definite and firm conviction that a mistake has been committed," *United States v. De la Cruz-Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998) (internal quotation marks omitted), and we therefore will not reverse this finding of falsity by the district court.

The government argues that the district court erred in striking this entire false statement instead of just the phrase "[w]ithin the last week." However, although the court broadly stated that "this statement should . . . be stricken" (R.

at 127), the rest of the suppression order suggests that the court in fact excised only the false portion of this sentence. The court specifically found that "the county court judge could have reasonably believed that . . . Officer Fitzgibbons smelled [the odor of burning marijuana] on four separate occasions" (R. at 130), and we note that the affidavit would not support a finding that Officer Fitzgibbons smelled the odor on four occasions if the full sentence were excised from the affidavit. In our analysis of probable cause, we will thus follow the district court's apparent decision to consider all of this sentence except the phrase related to the timing of the observations.

Finally, the district court found the following statement to be false: "Officer Fitzgibbons related that the manager of the [apartment complex] contacted him within the last two weeks on several occasions about apartment #230 due to a large amount of pedestrian traffic coming to and from the apartment at all hours of the day." (R. at 305.) The district court concluded that this statement made "three separate assertions: (1) that [the apartment manager] was the one that witnessed the traffic, (2) that she had contacted Officer Fitzgibbons with[in] the last two weeks on several occasions, and (3) that the traffic occurred at all hours of the day." (R. at 128.) The court then found that this statement was false because these three assertions had no support in the record.

Before addressing the district court's findings as to this statement, we must first answer a subsidiary question: what standard of review should we apply to the

district court's interpretation of the affidavit's language? We have been unable to find any precedent directly addressing this issue, but we find guidance in the analogous issue of our review of a district court's interpretation of a written contract. Because we are "in as good a position as the trial court to interpret a written document," *Valley Nat'l Bank v. Abdnor*, 918 F.2d 128, 130 (10th Cir. 1990), we review the district court's interpretation of an unambiguous contract de novo, *Dillon Family & Youth Servs., Inc., v. Dep't of Human Servs.*, 965 F.2d 932, 933 (10th Cir. 1992). However, "when the trial court resorts to extrinsic testimony to ascertain the meaning of the contractual terms, the interpretation is factual . . . [and] cannot be set aside unless clearly erroneous." *Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1424 (10th Cir. 1987). We conclude that this standard should also guide our interpretation of a written affidavit. Where the district court uses extrinsic evidence to determine what the affidavit means, we will reject the court's interpretation only if clearly erroneous. However, where the district court's interpretation of the affidavit is based solely on the court's reading of the written words in the affidavit, we will not defer to the court's interpretation.

In this case, the district court relied on no extrinsic evidence to aid in interpreting the statement at issue, but simply held that the language of the affidavit made certain assertions. We therefore interpret this portion of the affidavit de novo, keeping in mind that "[a]ffidavits for search warrants must be

-11-

tested in a common sense and realistic manner, and warrants issued thereon should not be interpreted hypertechnically." *United States v. Berry*, 423 F.2d 142, 144 (10th Cir. 1970).

Reading the affidavit de novo, we interpret the statement at issue as asserting that Officer Fitzgibbons was contacted by the apartment manager on several occasions in the two weeks prior to preparation of the affidavit and that the manager spoke to Officer Fitzgibbons on these occasions regarding pedestrian traffic to Defendant's apartment. We disagree with the district court's conclusion that the affidavit asserts that the manager personally observed the pedestrian traffic; rather, we conclude that the affidavit simply and unambiguously states that the manager contacted Officer Fitzgibbons about pedestrian traffic. We therefore disagree with the district court's explanation that this statement was false because the record provided no evidence that the manager herself witnessed pedestrian traffic and because she could not have witnessed the traffic at all hours of the day and night.

However, although we disagree with the district court's explanation, we are convinced that the court's finding of falsity was nevertheless correct. First, we note that the district court emphasized the fact that Officer Fitzgibbons originally testified on direct examination that he was told about the pedestrian traffic by the other five employees, not the manager. Although the district court, based on its incorrect reading of the affidavit, focused only on the suggestion that the manager

did not herself *observe* the pedestrian traffic, this testimony also clearly suggests that the manager did not *report* the traffic to Officer Fitzgibbons. The district court found this testimony to be more credible than Officer Fitzgibbons' later assertion that the affidavit was correct and that the manager did contact him about pedestrian traffic. We conclude that the court's misinterpretation of the affidavit does not negate this credibility determination.

Second, the district court also pointed out that Officer Fitzgibbons' report, prepared the night after the warrant was executed, nowhere mentioned receiving any complaints of pedestrian traffic from the manager, nor indeed from any apartment employees. Moreover, as the district court emphasized, the manager herself did not mention pedestrian traffic in her statement taken by Officer Fitzgibbons on the night of April 24th.[3] Again, these reasons for the court's finding of falsity are not negated by the court's incorrect interpretation of the affidavit. Based on all of these factors, we conclude that the district court's misinterpretation of the affidavit does not require us to reverse the court's finding

---

[3] The government argues that no inferences can be drawn from the manager's failure to mention pedestrian traffic in her statement because her statement was short, she was busy when she prepared it, and Officer Fitzgibbons testified that he did not tell her to prepare an inclusive statement regarding everything she had observed. Particularly in light of the fact that the apartment manager's statement actually includes one clarifying query regarding Defendant's identity, written by Officer Fitzgibbons and responded to by the manager at the bottom of her statement, we find this argument unpersuasive.

that this affidavit statement was false.[4]

The government further argues that the district court could have omitted the disputed portions of this statement so that the sentence would indicate that "Officer Fitzgibbons related that the manager of the [apartment complex] contacted him within the last two weeks . . . about apartment #230." (Appellant Reply Br. at 11.) However, when a district court finds a statement in an affidavit to be false, the court does not commit clear error by refusing to edit the false testimony clause by clause. In this case, moreover, even if the court had edited the sentence as suggested by the government, it would not change our conclusion regarding probable cause.

The district court concluded that all of these false statements were recklessly included in the affidavit based on several factors. First, the court found that Detective Saunders relied solely on the verbal statements of Officer Fitzgibbons in preparing the affidavit[5] and that key parts of Officer Fitzgibbons'

---

[4] The government suggests that we can find this statement to be true based on Officer Fitzgibbons' observation of pedestrian traffic, as described in his police report, and the alleged observation of pedestrian traffic "at all hours of the day and night" by other apartment employees. However, although the affidavit could perhaps have truthfully stated that several apartment employees as well as Officer Fitzgibbons had observed significant pedestrian traffic, the fact remains that it did not. Instead, the affidavit's only reference to pedestrian traffic was its representation that the apartment manager contacted Officer Fitzgibbons regarding this problem. And, as described above, we conclude that the district court did not clearly err in finding this representation to be false.

[5] The government asserts that Detective Saunders confirmed with the
(continued...)

oral report to Detective Saunders "were either inaccurately reported or misunderstood."[6] (R. at 125.) Second, the court found that Officer Fitzgibbons "neither read nor reviewed the contents of the [a]ffidavit before it was submitted to the state court judge." (*Id.*) Third, the court found that neither Detective Saunders nor Officer Fitzgibbons verified that the information in the affidavit was

[5](...continued)
apartment manager that she had smelled the odor of marijuana coming from Defendant's apartment and that the smell was creating a problem with prospective tenants. We note that Detective Saunders indeed testified at the first suppression hearing that he contacted the manager of the complex and that she told him she had smelled marijuana outside Defendant's apartment. At the *Franks* hearing six months later, however, he indicated that he did not speak with anyone other than Officer Fitzgibbons from the complex before preparing the affidavit. Later in the hearing, he testified that he "briefly spoke" to one of the apartment employees, but it is unclear from this testimony whether he spoke to the employee before or after obtaining the warrant.

We are unwilling to say, based on this discrepancy in Detective Saunders' testimony, that the district court's finding was clearly erroneous. In any event, however, the record undisputably shows that Detective Saunders never spoke to any of the apartment employees regarding pedestrian traffic to Defendant's apartment and that Officer Fitzgibbons was his sole source for this significant information. Thus, whether or not Detective Saunders spoke to the apartment manager regarding the odor of marijuana, the district court's finding that Detective Saunders failed to verify the assertion that the apartment manager had reported pedestrian traffic to Officer Fitzgibbons is uncontradicted by the record.

[6]Although it is true that a search warrant affidavit may contain hearsay evidence, *see United States v. Mathis*, 357 F.3d 1200, 1204 (10th Cir. 2004), the government is held accountable "for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit," *Kennedy*, 131 F.3d at 1376. *See also Franks*, 438 U.S. at 163 n.6 (["T]he Court [in *Rugendorf v. United States*, 376 U.S. 528 1964)] took as its premise that police could not insulate one officer's deliberate misstatement merely by relaying it through an officer–affiant personally ignorant of its falsity.").

-15-

accurate before it was submitted to the state judge.  Fourth, the court noted that Officer Fitzgibbons' report, prepared the evening the search warrant was executed, was inconsistent with the affidavit in important ways, and these inconsistencies "were not identified and considered by the two officers prior to the submission of the [a]ffidavit." (*Id.* at 126.)  Finally, the court found that the affidavit attributed statements to the apartment employees that were not verified prior to submission of the affidavit and that were not supported by the written statements obtained from the employees the day the warrant was executed.  The court noted that neither officer asked any of the employees why "their written statements did not contain the same information as that which was attributed to them in the [a]ffidavit." (*Id.*)  The district court concluded, based on all of these factors, that both Officer Fitzgibbons and Detective Saunders acted with reckless disregard for the truth in preparing the affidavit.

After a careful review of the evidence, we are convinced that the district court did not clearly err in finding that the officers acted with reckless disregard for the truth in preparing the affidavit, and we therefore will not overturn this factual finding on appeal.

Having concluded that the district court did not clearly err in finding that several statements in the search warrant affidavit were false and that the officers included these falsities in the affidavit with reckless disregard for the truth, we next review de novo the district court's legal conclusion that, after excision of the

false portions of the affidavit, the remainder of the affidavit did not establish probable cause.

As appropriately excised by the district court, the affidavit included the following assertions: (1) "[t]he management related that frequently when they walk by apartment #230 they smell a strong odor of marijuana emitting from inside apartment #230"; (2) "[t]he management related that they have received several complaints from other tenants about apartment #230"; (3) "[t]his problem has been affecting . . . potential tenants who have walked by apartment #230 and smelled the odor while viewing the property"; (4) Officer Fitzgibbons has gone to the apartment in response to at least four complaints from the management about the odor and, upon arriving at the apartment, he "could smell a very strong odor of marijuana emitting from under the door of the apartment";[7] (5) Officer Fitzgibbons has experience detecting the odor of marijuana and "the odor he smelled coming from apartment #230 is consistent with his training and many experiences as marijuana"; (6) "[t]he last date that Officer Fitzgibbons attempted to contact the occupant of #230 was on 4/22/06 and at that time Officer

---

[7] We note that there is some ambiguity in the affidavit regarding whether Officer Fitzgibbons responded to the apartment and smelled the odor after every complaint or whether he visited the apartment once in response to all four complaints. However, we see no clear error in the district court's finding that the state judge could have reasonably believed that Officer Fitzgibbons smelled the odor on four separate occasions, and we therefore construe the affidavit to assert that Officer Fitzgibbons went to the apartment on four occasions in response to management complaints, smelling the odor of marijuana on each occasion.

Fitzgibbons could hear someone inside the apartment moving around and also could smell an odor of marijuana emitting from the apartment but still no occupant would open the door for him"; (7) Defendant's five prior arrests, dating from November 1995 to May 2004, included a June 2000 arrest for "Possession of Marijuana and Possession of Narcotic Equipment"; and (8) the same day that the affidavit was prepared, a drug dog taken to the hallway outside Defendant's apartment "had a slight change in behavior that . . . was consistent with the odor of illegal narcotics, [but this] change . . . is not conclusive to the fact that the odor is emitting from inside of apartment #230."   (R. at 306.)

As an initial matter, we consider whether the report that "the management" frequently smelled the odor of marijuana emitting from Defendant's apartment is relevant to the probable cause analysis.  The district court concluded that this report did not support a finding of probable cause because "nothing in the Affidavit . . . indicates that [the employees] had any experience detecting the odor of marijuana."  ( R. at 130.)  However, under the circumstances of this case, we conclude that this representation was relevant to probable cause.  The excised affidavit represented that the management reported the frequent smell of marijuana coming from Defendant's apartment and that, in response to those complaints, an officer who was qualified to detect the odor went to the scene and verified the management report.  The officer's observations thus verified that the management was correctly identifying the odor, and we therefore conclude that

the management's frequent observation of the odor of marijuana was properly part of the probable cause analysis before the state judge.

Given this suggestion of frequent marijuana use at Defendant's apartment, in conjunction with Officer Fitzgibbons' observation of the odor just two days before the affidavit was prepared and submitted, we conclude that there was probable cause to believe that illegal drugs would be found in Defendant's apartment at the time of the search. While the excised affidavit only supported an inference of drug use in Defendant's apartment, not drug trafficking or cultivation, *see United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000) (acknowledging "the common-sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking"), the affidavit nevertheless suggested that such drug use was repeated and ongoing. "When the circumstances suggest ongoing criminal activity, the passage of time recedes in importance." *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005); *cf. Shivers v. State*, 573 S.E.2d 494, 498 (Ga. Ct. App. 2002) (holding that warrant obtained two days after detection of burnt marijuana odor should have been suppressed because, among other reasons, "there were no facts tending to show that the suspected use of the drug was not an isolated occurrence, but a continuous activity"). We conclude that the frequent observation of the smell of burning marijuana coming from Defendant's apartment, verified on four separate occasions by a trained police officer, in combination with that officer's most

recent detection of the smell two days before obtaining the warrant, was sufficient to support a finding of probable cause, regardless of the ambiguities presented by the evidence of the drug dog and his handler.  Because we conclude that this evidence was sufficient to establish probable cause, we do not consider whether the reported odor observation by the tenants (whose qualifications are not in the affidavit) could also support probable cause.

For the foregoing reasons, we **REVERSE** the district court's granting of Defendant's motion to suppress.