The STATE of Ohio, Appellant,

v.

DIBBLE, Appellee.

[Cite as *State v. Dibble*, 195 Ohio App.3d 189, 2011-Ohio-3817.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–648.

Decided Aug. 4, 2011.

192

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellant.

R. William Meeks Co., L.P.A., and David H. Thomas, for appellee.

BRYANT, Presiding Judge

{¶ 1} Plaintiff-appellant, state of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion to suppress of defendant-appellee, Lawrence A. Dibble. Because the trial court's findings of fact support its decision to suppress the evidence the state obtained through the warrant at issue, we affirm.

## I. Facts and Procedural History

{¶ 2} On February 3, 2010, Upper Arlington Police Detective Andrew Wuertz asked a Franklin County municipal court judge to approve a search warrant for

defendant's home. Detective Wuertz sought the warrant after speaking with two young women, E.S. and E.K., who reported their past experiences with defendant, a theater instructor at a private school for students enrolled in kindergarten through 12th grade. In the affidavit supporting the warrant, Wuertz referred to E.S. as victim No. 1 and E.K. as victim No. 2.

{¶ 3} According to the warrant affidavit, defendant "inappropriately" touched the vaginal area and buttocks of his student, victim No. 1, while they were at school. Victim No. 1 later confronted defendant about the incident, and defendant said, "I just wasn't thinking." Victim No. 2 "stated she also had inappropriate contact with" defendant. The incident regarding victim No. 2 occurred after victim No. 2 graduated from the school where defendant was her teacher, and it involved defendant's taking photographs "of her nude vaginal area during one of their meetings where inappropriate touching was involved." Wuertz claimed that he needed to search defendant's home because defendant's "computers, camera[s], media storage devices, etc. may contain correspondence, and photos to substantiate victim No. 1 and victim No. 2's claims."

{¶ 4} The municipal court judge approved the warrant, and when it was executed, police seized a laptop computer, camera, and several tapes and DVDs from defendant's home. Based on the evidence obtained from that search, defendant was indicted on 20 counts of voyeurism; he also was charged with one count of sexual imposition for sexually touching E.S. None of the charges pertained to E.K.

{¶ 5} Defendant filed a motion to suppress evidence obtained from the search of his home, arguing that Wuertz had improperly referred to E.K. as a victim in the search-warrant affidavit, given that E.K. was an adult and their sexual activity was consensual. The trial court held a hearing on the motion on June 29, 2010. At the commencement of the hearing, defense counsel noted, "I think initially, Judge, I do need to make a preliminary showing for the specific issue I've raised here." The defense then called Wuertz to testify.

{¶ 6} Wuertz began by conceding that the information he possessed regarding E.S. gave him no probable cause to search defendant's home. The subsequent questioning thus focused on E.K., or victim No. 2. Defense counsel inquired of Wuertz about using the term "victim No. 2" to refer to E.K., which the detective admitted was used six times in the affidavit "in order to get a search warrant." In response to the questions, Wuertz agreed that although E.K. had told him that defendant took pictures of her and sexually touched her, she also had said that those incidents occurred after she turned 18 and was no longer a student at the school where defendant taught. Wuertz, however, stated that whether E.K. had consented to the activity was debatable. Wuertz testified that defendant and E.K. were consenting adults only in a strict definition of that phrase. In

response to counsel's asking whether E.K. was merely a jilted lover whose concern about her relationship with defendant arose only after she learned of defendant's incident with E.S., Wuertz replied, "I think it's inaccurate to call her a lover." The detective nonetheless acknowledged that E.K. had said that defendant visited her at her home in Maine, went to New York City with her to see a Broadway show, and shared a carriage ride in Central Park. Wuertz had not filed any charges pertaining to E.K.

{¶ 7} Despite these activities, the detective stated that he thought E.K. was a victim. Defense counsel explored that statement, inquiring of other paperwork the detective completed in the case. The detective's testimony revealed that he did not include E.K. as a victim in any other form he completed on the case, including the complaint and the U–10.100, both of which were completed either the same day or the day before the affidavit supporting the search-warrant request was presented to the court. The detective conceded that he had no basis to charge defendant with a crime as to E.K.

{¶ 8} When defense counsel finished his direct examination of Wuertz, he said he thought he had "gotten through * * * the window I need to get through." The trial court asked the prosecutor whether he was "admitting" that the defense had met its burden and "moving on to the State's part of their case," or if he was "simply cross-examining this witness to rebut [the defense's] burden." The prosecutor said, "I'm simply cross-examining the witness."

{¶ 9} Wuertz first testified on cross-examination about defendant's sexual activity with E.S. According to the detective, E.S. had been defendant's student since seventh grade, and E.S. considered defendant a father figure. In April of her senior year, E.S. was working as defendant's aide and rehearsing lines with him. Defendant told E.S., " 'As a reward every time I get my lines correct, I get to touch your stockings.' And she allowed him to do that." Another time, after defendant correctly recited his lines, he said, "I believe I deserve a reward for that." E.S. was standing in front of him, and he brushed his fingers against her vaginal area and felt her buttocks. E.S. told Wuertz that the sexual contact was unwanted and that she had written defendant a letter about it. Defendant tore the letter and threw it away, saying, "You can't tell anyone about this, or it will ruin my life."

{¶ 10} Defendant also required E.S. to give him back massages, lifting his shirt for her to "touch her hands against his skin." Although not included in the affidavit supporting the warrant, Wuertz's testimony included information that defendant also took pictures of her and other students in unitards, instructing the students not to wear anything underneath the suits, which were "practically see-through, if not see-through." Wuertz concluded that defendant had "brain-washed" or manipulated E.S. so she would do whatever he asked of her.

{¶ 11} Wuertz thought E.K. was also a victim of defendant because "[s]he described a very similar situation to what [E.S.] had described." Wuertz stated that E.K.'s relationship with defendant started when she became involved in theater in the seventh grade. She, too, considered defendant a father figure, and defendant would even refer to himself as her stepfather. She also was a former aide to defendant who taught E.S. how to give him massages. Wuertz said that he thought E.K. was a victim because defendant deceived her into allowing him to photograph her vaginal area under the guise of wanting to study her "internal energy."

{¶ 12} Wuertz testified that when he was writing the warrant affidavit, he thought defendant might be charged with a crime for his conduct with E.K., and he stated that "as of today I still consider her a victim." According to Wuertz, he had described, in the warrant affidavit, defendant's touching E.K. as "inappropriate" because "it was very evident she was very conflicted about what had happened, that although she would reluctantly say it was consensual, she also would say she wasn't comfortable with it, and that the way that he touched her in order to take some of the pictures, she wasn't completely comfortable with."

{¶ 13} Wuertz went to the municipal court judge to obtain a search warrant, and she swore him as a witness and asked him about his investigation. Wuertz testified at the suppression hearing that he had told the judge about defendant's relationships with E.K. and E.S. Wuertz mentioned not only that defendant took pictures of them while they were in unitards but that they were uncomfortable with that activity.

{¶ 14} On redirect examination, defense counsel presented the detective with yet another document he had completed, the Ohio Uniform Incident Report, completed on February 2, 2010, and reviewed by his sergeant on February 3, 2010, the day the detective sought the search warrant. Not only did the form not include E.K. as a victim, but Wuertz specifically noted on the form only one victim. Although Wuertz stated that he later could have added a victim to the report, he did not add E.K. as a victim to the form because he lacked probable cause that defendant had committed a crime against E.K. Defense counsel asked the detective why, given that admission, he referred to E.K. as a victim in the search-warrant affidavit, and Wuertz replied, "At the time that I typed the search warrant, we were still continuing the investigation. I believed that [E.K.] could potentially still be a victim."

{¶ 15} The trial court inquired whether the parties had any further evidence to present. When both declined, the state requested the opportunity to present a closing argument that addressed the merits of defendant's motion to suppress evidence; defendant responded. After ascertaining that neither party had

anything further, the court stated it would take the matter under advisement, explaining it would not rule from the bench but would issue a brief decision later.

{¶ 16} On July 1, 2010, the trial court issued a written decision and entry granting defendant's motion to suppress. Although it acknowledged that defendant's behavior was reprehensible, the court concluded that Wuertz "lacks credibility in regards to his reasoning" for referring to E.K. as a victim in the search-warrant affidavit. The court decided that Wuertz had knowingly and intentionally made a false statement when he characterized E.K. as a victim in the search-warrant affidavit and that he had used the false characterization to create probable cause to search defendant's home. The court declined to consider Wuertz's testimony about the oral statements made to the municipal court judge, noting not only that no "record" of the statements existed, but that Wuertz's testimony about the statements also lacked credibility. Lastly, the court concluded that Wuertz's references to E.S. as a victim in the search-warrant affidavit did not create probable cause for the search of defendant's home.

{¶ 17} The state filed a motion for reconsideration, arguing that although the June 29, 2010 hearing "was represented to be limited to the threshold question of whether the defense made a sufficient preliminary showing of the need for a full hearing," the court's "decision and entry prematurely reached the full merits of the issues, rather than merely determining whether a full hearing should occur." The state claimed that had the court proceeded with a full hearing, the municipal court judge who issued the search warrant for defendant's home would have testified to the additional information set forth in an affidavit attached to the motion for reconsideration.

{¶ 18} According to the affidavit, the judge confirmed that she had had a conversation with Wuertz about defendant when the search warrant was requested but that a court reporter had not recorded the conversation or transcribed it. In addition, the judge surmised that Wuertz did not lie to her when he referred to E.K. as a victim in the search-warrant affidavit. Relying on her experience as a former assistant city prosecutor who not only was familiar with how police conduct their investigations but had worked with victims and witnesses herself, the judge said, "I believe that the word 'victim' and the reference to 'victim # 2' is broader than a reference to someone who is the victim of a criminal act for whom a criminal complaint may be filed at that point against a named defendant."

{¶ 19} The judge also noted that from her experience, "a victim may or may not evolve into a prosecuting witness," and she "understood from the affidavit that 'victim No. 2' had graduated and there was a touching believed to be inappropriate that was under continuing investigation by the Detective." The

trial court declined to rule on the motion for reconsideration, because the state had already filed an appeal.

## II. Assignments of Error

{¶ 20} The state assigns the following errors on appeal:

### FIRST ASSIGNMENT OF ERROR

The trial court prejudicially erred in going beyond the threshold question of whether the defense had made a sufficient preliminary showing to justify a full hearing on the motion to suppress.

### SECOND ASSIGNMENT OF ERROR

The trial court erred in concluding that the defense had shown intentional or reckless falsity, especially in light of the sworn oral statements made by the officer contemporaneous to the judge's approval of the warrant.

### THIRD ASSIGNMENT OF ERROR

The trial court erred in refusing to find that the good-faith exception to the exclusionary rule applied.

### FOURTH ASSIGNMENT OF ERROR

The trial court erred in concluding that the search warrant for defendant's home could not have issued without the "Victim # 2" characterization.

## III. Motion to Strike

{¶ 21} Defendant filed a motion to strike sections of the state's brief that rely on the municipal court judge's affidavit, asserting that the affidavit is not part of the appellate record, since the trial court did not have it when it ruled on defendant's motion to suppress. Pursuant to App.R. 9(A), "[t]he original papers and exhibits thereto filed in the trial court * * * shall constitute the record on appeal in all cases." Here, the state submitted the affidavit to the trial court as part of its motion in response to the court's decision granting defendant's motion to suppress, and the affidavit was transmitted to this court as part of the record. Because the affidavit is part of the appellate record, we deny defendant's motion to strike. We address later whether the evidence may be considered in determining the appeal.

## IV. First Assignment of Error—Scope of Hearing

{¶ 22} The state's first assignment of error asserts that the trial court erred when it granted defendant's motion to suppress following the June 29, 2010 hearing. The state contends that the hearing was meant to address only whether defendant made a preliminary showing to justify a full evidentiary hearing.

{¶ 23} Defendant's motion to suppress asserted that the warrant authorizing the search of his home was invalid because the accompanying affidavit contained false statements. In *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, the United States Supreme Court established the procedure for challenges to the veracity of a search-warrant affidavit. The defendant initially must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and * * * the allegedly false statement is necessary to the finding of probable cause." Id. at 155–156. At this preliminary stage, the defendant must provide "an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *State v. Roberts* (1980), 62 Ohio St.2d 170, 178, 16 O.O.3d 201, 405 N.E.2d 247. "This offer of proof should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained." Id. If the defendant satisfies his or her preliminary burden, the defendant is entitled to a hearing on his motion to suppress. *Franks* at 156.

{¶ 24} The state urges us to construe the two-step procedure in *Franks* as requiring two separate evidentiary hearings. Although the state points to no case law indicating that the *Franks* analysis requires such a bifurcated process, the state asserts that it was prejudiced when the trial court combined the two prongs of the *Franks* analysis into a single hearing and resolved them in a subsequent decision and entry.

{¶ 25} To support its argument, the state notes that defendant conceded at the beginning of the hearing that he did "need to make a preliminary showing for the specific issue I've raised here, so we would call Detective Andrew Wuertz from Upper Arlington Police Department." After defendant presented Wuertz's testimony, the trial court specifically asked the state whether it was "admitting" that defendant had satisfied his initial burden or whether the state intended to "simply cross-examinin[e] this witness to rebut his burden that [defendant] needs to make." The state stated it was "simply cross-examining [the] witness."

{¶ 26} Defendant responds to the state's argument by asserting that the state waived its *Franks* argument. Defendant initially notes that the state did not object in the trial court when the court combined the two *Franks* steps into one hearing. Secondly, defendant argues that the state waived any objection when it argued the merits of defendant's motion to suppress both in its memorandum opposing defendant's motion and in its closing arguments during the hearing. The state argues that it could not have waived its *Franks* argument in the trial court, because the court was not clear that it intended to deviate from the *Franks*

procedure until it issued its decision and entry granting defendant's motion to suppress.

{¶ 27} The procedure *Franks* outlined contemplates two distinct processes concerning an attack on a search-warrant affidavit, one procedural and one more substantive. The first step in the *Franks* analysis requires a defendant to make a preliminary showing, presumably through a motion, that the search-warrant affidavit contains intentionally false information. If the court determines that the defendant made that preliminary showing, then defendant is entitled to a hearing on his motion. *Franks,* 438 U.S. at 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667.

{¶ 28} The second step in the *Franks* analysis, the hearing, requires a defendant, in attacking the validity of a search-warrant affidavit, not only to establish by a preponderance of the evidence that the affidavit contained intentionally or recklessly false information, but also to show that without that false information, the affidavit contained insufficient content to establish probable cause, meaning the fruits of the search must be suppressed. Id. The issue here is what the trial court intended when at the hearing it referred to defendant's initial burden.

{¶ 29} Defendant filed his motion to suppress on May 12, 2010, arguing that the search-warrant affidavit contained intentionally false information; the state opposed defendant's motion with a memorandum addressing the merits of defendant's arguments, but not referring to an initial showing under the procedural aspects of the first step of *Franks*. The trial court, through the act of granting a hearing on the matter, apparently concluded that defendant had satisfied his burden under the first step of *Franks* and was entitled to a hearing under the second step of *Franks*.

{¶ 30} Accordingly, when not only the trial court but also defendant, consistent with his written motion that referred to a "preliminary showing" under the second step of *Franks*, mentioned defendant's "preliminary showing" and initial "burden" during the hearing, they referred to the second step of the *Franks* analysis requiring defendant to establish by a preponderance of the evidence that the affidavit contained intentionally false information. The trial court's decision and entry bolster such a conclusion by including the citation to and explanation of the second step of the *Franks* analysis in determining that defendant, at the hearing, had satisfied his initial burden of demonstrating that the affidavit contained intentionally false information.

{¶ 31} Further supporting the conclusion that the initial "burden" the trial court referred to was in the second step of the *Franks* analysis, the trial court's decision and entry specifically concluded that "the first prong of the *Franks* test has been satisfied," and then proceeded to determine whether "the remaining

allegations in the warrant, without the false language, constitute probable cause." That language represents a straight-forward application of the two parts of the second step of the *Franks* analysis. The trial court properly complied with both steps of the two-step *Franks* analyses in granting defendant a hearing and then, based on the hearing, determining defendant's motion to suppress.

{¶ 32} Even if the trial court failed to comply precisely with the procedure in *Franks*, the state does not demonstrate prejudice. The state asserts only that it intended to call the municipal court judge who had issued the warrant to testify about Wuertz's sworn statements at the time he requested the warrant. A court, however, cannot rely on sworn testimony that was not properly recorded and transcribed. *State v. Shepcaro* (1975), 45 Ohio App.2d 293, 298, 74 O.O.2d 437, 344 N.E.2d 352 (concluding that pursuant to Crim.R. 41(C), "supplemental testimony taken orally by the judge from an affiant" applying for a search warrant "will not be admissible at a hearing to suppress unless that testimony has been recorded by a court reporter or recording equipment, transcribed and made a part of the affidavit"). Moreover, to the extent that the municipal court judge would testify that she believed Wuertz was being truthful and that his using the term "victim" was appropriate, such testimony would serve only to duplicate what is already known: the municipal court judge determined probable cause existed at the time she issued the search warrant. Had she not believed Wuertz, she presumably would not have issued the warrant.

{¶ 33} For the stated reasons, the state's first assignment of error is overruled.

## V. Second Assignment of Error—Intentional or Reckless Falsity

{¶ 34} The state's second assignment of error asserts that the trial court erred in concluding that defendant carried his burden to prove that the affidavit supporting the search warrant contained intentional or reckless falsity.

{¶ 35} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." *State v. Vest* (May 29, 2001), 4th Dist. No. 00CA2576, 2001 WL 605217. Thus, an appellate court's standard of review of the trial court's decision granting the motion to suppress is twofold. *State v. Reedy*, 10th Dist. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, ¶ 5, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100–101, 709 N.E.2d 913. Because the trial court is in the best position to weigh the credibility of the witnesses, we must uphold the trial court's findings of fact if competent, credible evidence supports them. Id., citing *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141. We nonetheless must independently determine whether, as a matter of law, the facts meet the applicable legal standard. Id., citing *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.

{¶ 36} In his motion to suppress, defendant argued that Wuertz intentionally or recklessly included false information in his affidavit to create probable cause for the search warrant. " 'To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either "intentionally, or with reckless disregard for the truth." ' " *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31, quoting *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819, quoting *Franks,* 438 U.S. at 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667. " 'Reckless disregard' means that the affiant had serious doubts about the truth of an allegation." Id., citing *United States v. Williams* (C.A.7, 1984), 737 F.2d 594, 602. "Omissions count as a false statement if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.' " Id., quoting *United States v. Colkley* (C.A.4, 1990), 899 F.2d 297, 301. A person's intent or culpable mental state is a question of fact for the trial court. See, e.g., *Wissler v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 09AP–569, 2010-Ohio-3432, 2010 WL 2891641, ¶ 33, quoting *Fouty v. Ohio Dept. of Youth Servs.,* 167 Ohio App.3d 508, 2006-Ohio-2957, 855 N.E.2d 909, ¶ 57, quoting *B & J Jacobs Co. v. Ohio Air, Inc.,* 1st Dist. No. C–020264, 2003-Ohio-4835, 2003 WL 22103385, ¶ 10; *State v. Mason,* 6th Dist. No. L–06–1404, 2008-Ohio-5034, 2008 WL 4409432, ¶ 69, citing *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 106.

{¶ 37} The trial court factually concluded "Detective Wuertz's reasons for listing E.K. as a 'victim' only on the search warrant," but on no other documents introduced at the hearing, "are intentionally misleading and false." As the court explained, "Detective Wuertz fully understood at the time he petitioned the court for a search warrant that he did not have probable cause for any criminal charge against Defendant as it relates to [E.K.] and lacked a good faith belief that the information he possessed would lead to any future charges." With that premise, the trial court specifically concluded that "Detective Wuertz knowingly and intentionally included the false characterization of [E.K.] in order to create probable cause to search Defendant's home." The record contains competent, credible evidence supporting the trial court's factual determination.

{¶ 38} The trial court relied on Wuertz's own testimony that the detective had no probable cause either to search defendant's home regarding his conduct with E.S. or for a charge against defendant regarding his conduct with E.K. Indeed, the detective acknowledged that he had no basis to search defendant's home apart from the activities related to E.K.

{¶ 39} Moreover, the trial court considered the three different forms that Wuertz used in his investigation, on which, though given the opportunity, Wuertz never noted that E.K. was a victim. Initially, the court pointed to the complaint

filed regarding E.S. that failed to reference E.K. "as a victim or otherwise." The court further observed that Wuertz did not mention E.K. in the Arrest Information Form. Finally, Wuertz did "not mention [E.K.] in his Ohio Uniform Incident U–10 Report and specifically notes that only '1' victim is involved." Although Wuertz testified that he personally considered E.K. to be a victim, the court pointed out that he never filed "a complaint, u–10 report, or arrest report specifically as it pertains to [E.K.]." Rather, the trial court found that "Detective Wuertz knows the definition of victim and deliberately chose not to include [E.K.] in any of his other police documents."

{¶ 40} The trial court, as the finder of fact, must determine issues of credibility and weight of the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Here, competent, credible evidence supported the trial court's factual determination that "Detective Wuertz knowingly and intentionally included the false characterization of [E.K.]" in the search warrant affidavit "in order to create probable cause to search Defendant's home."

{¶ 41} The state nonetheless focuses on the meaning of the word "victim," arguing that the detective personally believed E.K. to be a victim. See *United States v. Garcia–Zambrano* (C.A.10, 2008), 530 F.3d 1249, 1256 (noting an appellate court need not defer to a district court's interpretation of an affidavit "where the district court's interpretation of the affidavit is based solely on the court's reading of the written words in the affidavit"). *Garcia–Zambrano*, however, goes on to conclude that "[w]here the district court uses extrinsic evidence to determine what the affidavit means, [an appellate court] will reject the [lower] court's interpretation only if clearly erroneous." Id.

{¶ 42} Here, the trial court did not rely solely on the written affidavit. Rather, the trial court considered Wuertz's testimony that sought to explain why the detective used the term "victim" to refer to E.K. in the affidavit but did not use that term to describe E.K. in any other documentation. The trial court specifically concluded that Wuertz "lacks credibility in regards to his reasoning of using [E.K.] in the affidavit."

{¶ 43} The trial court noted that most people would agree that "even minimal levels of manipulation and control exerted over young adult women by older men violate grounds of immorality and may create some measure of victimization," but such circumstances do not satisfy the constitutional standards for a search for criminal activity. Read in that context, the trial court's including the Black's Law Dictionary definition of "victim" in its decision was not an attempt to apply an overly rigid standard for language used in a search-warrant affidavit, but to contrast the meaning that the word "victim" ordinarily has in a criminal investi-

gation, such as in the various forms that Wuertz completed, with the detective's application of his personal belief as to the word's meaning. The trial court determined that Wuertz understood that E.K. was not a "victim" in the criminal sense, so his using that term six times in the search-warrant affidavit, as compared to a single reference to E.S., amounted to Wuertz's knowingly and intentionally including false information in the affidavit in order to establish probable cause.

{¶ 44} Because competent, credible evidence supports the trial court's specific factual determination that Wuertz knowingly and intentionally included false information in his search-warrant affidavit in order to establish probable cause to search defendant's house, the trial court's decision to suppress the evidence obtained as a result of the search complies with applicable law. *Franks.* The state's second assignment of error is overruled.

## VI. Third Assignment of Error—Good–Faith Exception

{¶ 45} The state's third assignment of error argues that the trial court erred in refusing to apply the good-faith exception to the exclusionary rule.

{¶ 46} Under the good-faith exception, the Fourth Amendment exclusionary rule should not operate to suppress evidence that officers obtained when acting in objectively reasonable reliance on a search warrant that a detached and neutral magistrate or judge issued but ultimately is determined to be lacking in probable cause. *United States v. Leon* (1984), 468 U.S. 897, 922–923, 104 S.Ct. 3405, 82 L.Ed.2d 677. "Leon teaches that * * * the police officer may rely upon the legal judgment and decision of the judge as to the propriety for [the] issuance of the warrant." *Columbus v. Wright* (1988), 48 Ohio App.3d 107, 112, 548 N.E.2d 320. More recently, the United States Supreme Court phrased the issue in terms of an officer's "objectively reasonable reliance" on a warrant. *State v. Geiter,* 190 Ohio App.3d 541, 2010-Ohio-6017, 942 N.E.2d 1161, ¶ 39, appeal not allowed, 128 Ohio St.3d 1445, 2011-Ohio-1618, 944 N.E.2d 695, citing *Herring v. United States* (2009), 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496.

{¶ 47} As the trial court noted in its decision, *Herring* involved a computer error that generated an invalid warrant, and the Supreme Court determined that the police had acted in good faith in relying on the defective warrant. Here, by contrast, no electronic or other mechanical error occurred. Instead, the trial court determined that Wuertz had deliberately included false information in his affidavit in order to obtain the search warrant. Given that one of the primary

goals of the exclusionary rule is to deter deliberate police misconduct, this is not a situation where the good-faith exception applies. *Herring* at 144.

{¶ 48} Accordingly, the state's third assignment of error is overruled.

## VII. Fourth Assignment of Error—Issuance of Search Warrant Absent "Victim No. 2"

{¶ 49} The state's fourth assignment of error asserts that the trial court erred in concluding that the search warrant for defendant's home could not have issued without the "victim No. 2" characterization used to describe E.K.

{¶ 50} Under *Franks*, if a defendant satisfies its burden that a search warrant affidavit contains intentionally false information, the search warrant remains valid only if the remaining allegations in the affidavit are sufficient to constitute probable cause. *Franks*, 438 U.S. at 156, 98 S.Ct. 2674, 57 L.Ed.2d 667. Having determined that Wuertz's use of the phrase "victim No. 2" in the affidavit was intentionally false and misleading, the trial court looked to the remaining allegations in the affidavit. All that remained were E.S.'s statements that defendant inappropriately touched her while she was a student at school. Nothing in the affidavit ties E.S.'s allegations to any criminal conduct or evidence at defendant's home. Indeed, the detective admitted that the affidavit, as it relates to E.S. only, presented no basis to search defendant's house.

{¶ 51} The state nonetheless asserts that a warrant can issue for "mere evidence" having a nexus to criminal behavior. *Warden v. Hayden* (1967), 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782. Even if E.K. were not a victim in her own right, the state argues, E.K. was still a witness with valuable information regarding potential evidence at defendant's home that might aid in defendant's conviction for the crime committed against E.S.

{¶ 52} Although E.S. asserted that defendant photographed her, she did not allege that any conduct took place at defendant's home. She alleged that defendant had touched her inappropriately on school grounds and photographed her at an undisclosed location. We note, however, that E.K. mentioned the photographs and added that no inappropriate touching occurred with her at school, thus suggesting the photographs were taken at school. Further, E.K.'s statements about defendant's photographing her pertained solely to E.K.'s consensual conduct with defendant. E.K. did not allege that defendant had photographed anyone other than her, and she did not assert that she had knowledge that defendant possessed explicit photographs of anyone other than her. Lastly, the affidavit supporting the warrant did not mention the photographs. Under *Hayden*, the state lacked probable cause to search defendant's home. Accordingly, the state's fourth assignment of error is overruled.

## VIII.   Disposition

{¶ 53} Having overruled the state's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Motion to strike denied;<br>judgment affirmed.

TYACK, J., concurs.

FRENCH, J., dissents.

FRENCH, Judge, dissenting.

{¶ 54} In the second assignment of error, appellant contends that the trial court erred by concluding that Wuertz intentionally included false information within the warrant affidavit in order to create probable cause for the warrant.   I agree.

{¶ 55} Appellee argued in his motion to suppress that Wuertz lied when referring to E.K. as a victim in the search-warrant affidavit.   To successfully attack the veracity of a search-warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either knowingly and intentionally or with reckless disregard for the truth.   *Franks v. Delaware* (1978), 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667.   Even if the search-warrant affidavit contains false statements of that type, the warrant is still valid unless, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.   Id. at 156.   Here, the trial court found that (1) the affidavit's characterization of E.K. as a "victim" was false and misleading and (2) Wuertz provided this false information knowingly, intentionally, and in order to create probable cause to search appellee's home.

{¶ 56} In reviewing appellee's motion to suppress, we must accept the trial court's factual and credibility determinations if they are supported by competent, credible evidence.   See *State v. Tolliver*, 10th Dist. No. 02AP–811, 2004-Ohio-1603, 2004 WL 625683, ¶ 38.   We need not, however, defer to the court's interpretation of the language of the warrant affidavit itself.   See *United States v. Garcia–Zambrano* (C.A.10, 2008), 530 F.3d 1249, 1256 (holding that when a district court's interpretation of a written warrant affidavit is based solely on the court's reading of the written words in the affidavit, the appellate court will not defer to the trial court's interpretation).

{¶ 57} Here, the trial court interpreted the term "victim" to mean, and only to mean, "a person who is the object of a crime."   I conclude, however, that it was improper for the trial court to apply such a limited definition.   Specifically, it is

improper for a court to invalidate warrants by interpreting the accompanying affidavits in a "hypertechnical" manner because the affidavits are drafted by nonlawyers in the midst and haste of a criminal investigation. *United States v. Ventresca* (1965), 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684.

{¶ 58} Used more broadly, "victim" can mean (1) "a person who suffers from a destructive or injurious action" or (2) "a person who is deceived or cheated, as by his own emotions or ignorance, by the dishonesty of others, or by some impersonal agency." Webster's Encyclopedic Unabridged Dictionary (Random House 1997).

{¶ 59} The trial court noted that few people "would argue with the notion that even minimal levels of manipulation and control exerted over young adult women by older men violate grounds of immorality and may create some measure of victimization." I agree. And applying this characterization to what may have occurred between E.K. and appellee, an affiant could have reasonably concluded that E.K. was a "victim" under a definition broader than the one the court imposed. Therefore, the characterization of E.K. as a victim was not false, and the trial court erred by suppressing the evidence on that basis.

{¶ 60} I have not considered whether suppression may be appropriate on other grounds. Rather, I would sustain appellant's second assignment of error only to the extent that it argued that the trial court erred by concluding that the characterization of E.K. as a victim was false. Because the majority has determined otherwise, I respectfully dissent.