THE STATE OF OHIO, APPELLANT, *v.* DIBBLE, APPELLEE.

[Cite as *State v. Dibble,* 133 Ohio St.3d 451, 2012-Ohio-4630.]

*A determination whether information in a search-warrant affidavit is false must take into account the nontechnical language used by nonlawyers.*

(No. 2011-1569—Submitted June 20, 2012—Decided October 10, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-648, 195 Ohio App.3d 189, 2011-Ohio-3817.

_____

SYLLABUS OF THE COURT

A determination whether information in a search-warrant affidavit is false must take into account the nontechnical language used by nonlawyers.

_____

LUNDBERG STRATTON, J.

{¶ 1}   This is an appeal from a judgment of the court of appeals affirming a trial court's judgment granting a motion to suppress.  Today we must decide whether the trial court abused its discretion in granting the motion to suppress after it determined that an officer knowingly and intentionally made false statements in his search-warrant affidavit.  Because we determine that the trial court did abuse its discretion, we reverse the judgment of the court of appeals, which upheld the trial court's ruling, and remand the cause to the trial court to conduct a new suppression hearing consistent with our holding.

**Facts and Procedural History**

{¶ 2}   On February 3, 2010, Upper Arlington Police Detective Andrew Wuertz asked a Franklin County municipal court judge to issue a warrant to search defendant-appellee Lawrence A. Dibble's home.  Detective Wuertz sought the warrant after speaking with two young women, E.S. and E.K., who reported

their experiences with Dibble, who was then a theater instructor at a private school for kindergarten through 12th grade.

{¶ 3} The search-warrant affidavit states:

> On February 2, 2010 Victim #1 [E.S.] reported to the Upper Arlington Police Department that while a student at The Wellington School, one of her teacher's [sic], Lawrence A. Dibble[,] touched her inappropriately. Victim #1 stated that she was rehearsing line[s] for a play with Dibble in the school when he asked for a reward for getting his lines correct. He asked to touch Victim #1's stocking on her leg. Upon touching the stocking Dibble then proceeded to run his hand up under Victim #1's skirt brushing his fingers across her vaginal area. Victim #1 stated she was shocked and froze as Dibble then ran his hands over her buttocks, and lower abdomen area. Victim #2 [E.K.] was with Victim #1 while she made the report. Victim #2 stated she also had inappropriate contact with Dibble. Victim #2 stated it was after she had graduated high school where Dibble had also been her teacher. Victim #2 stated that Dibble had taken photo's [sic] of her nude vaginal area during one of their meetings where inappropriate touching was involved. Victim #2 told investigators that Dibble used a digital camera to take the photo's [sic], and made her wear a pillow case over her head while he took them.
>
> On February 2, 2010 Victim #1 went to The Wellington School at the direction of the Upper Arlington Police wearing a recording device. She had a conversation with Dibble about the inappropriate touching where he stated "I just wasn't thinking."

2

Investigators from Upper Arlington believe Dibble's computers, cameras, media storage devices, etc. may contain correspondence, and photos to substantiate Victim #1 and Victim #2's claims.

**{¶ 4}** The warrant was issued on February 3, 2010, and it authorized the seizure of computers, cameras, and data-storage media. The warrant was executed the same day, and the search resulted in the seizure of several items, including a laptop computer, a camera, and several videotapes and DVDs.

**{¶ 5}** Based in part on the evidence seized, Dibble was arrested and charged with 17 felony counts of voyeurism, four misdemeanor counts of voyeurism, and one misdemeanor count of sexual imposition. None of the charges related to E.K.

**{¶ 6}** Dibble filed a motion to suppress the evidence obtained from the search of his home, arguing that Detective Wuertz had deliberately included false and misleading information in his search-warrant affidavit in that his references to E.K. as a "victim" were false because, as Wuertz knew, E.K. was an adult when the sexual acts described in the affidavit occurred and the acts had been consensual. The trial court held a hearing on the motion on June 29, 2010.

**{¶ 7}** Detective Wuertz testified that E.S. came to the police station with her mother and E.K. on February 2 to report what had happened to E.S. E.S. told Wuertz that during her senior year, she was Dibble's aide, which she described as a person who would do whatever Dibble needed done. Wuertz testified that E.S. had told him that she had known Dibble since she was in the seventh grade. Through the years, she had become close to Dibble, and she looked at him as a father figure.

**{¶ 8}** Detective Wuertz testified that E.S. had relayed to him that one of her duties in being an aide to Dibble was giving him back massages. They would

go into his office, he would close the door and remove his shirt, and she would rub his back. In addition, E.S. reported that Dibble had taken pictures of her in see-through or nearly see-through unitards and that Dibble had told her to wear nothing underneath.

{¶ 9} Detective Wuertz testified that the groping incident described in the search-warrant affidavit had taken place nearly a year before E.S. reported it, but he added that in talking to E.S., he felt that Dibble had manipulated her so that he could "get her to do whatever he asked her to do," and he had asked her not to tell anyone. E.S. told Wuertz that after the groping incident, she went to her next class but was upset, so she left that class and wrote Dibble a letter about the incident and took it to him. Before he finished reading it, he tore it up and threw it away and told E.S. that she could not tell anyone about the incident or it would ruin his life. Wuertz reported that E.S. had felt conflicted but had not told anyone. The incident continued to weigh on her to the point that she had trouble sleeping and she knew she had to report it.

{¶ 10} Detective Wuertz also testified that E.K., too, had been Dibble's theater aide when she was a senior and that Dibble had taken pictures of her in a unitard. She had taught E.S. how to give Dibble massages. E.K. also had looked at Dibble as a father figure, and in fact, Dibble had referred to himself as her stepdad.

{¶ 11} Detective Wuertz conceded that the information in the affidavit regarding E.S. would not have led him to believe that there was any evidence of the alleged inappropriate relationship in Dibble's home. He thus acknowledged that the information in the affidavit related to E.S. did not provide probable cause to search Dibble's home. When pressed about his using the term "victim" with regard to E.K., who was 18 years of age and no longer a student of Dibble's when the sexual contact described in the affidavit began, Wuertz refused to agree that

4

she was not a victim. Wuertz acknowledged that he had never filed a report, beyond the search-warrant affidavit, indicating that she was a victim.

{¶ 12} Detective Wuertz testified that when he appeared before the judge and presented her with the application for the search warrant and the supporting affidavit, she asked him some questions and he gave her some additional information verbally, under oath, that was not contained in the affidavit or application. Wuertz stated that he gave her more background information about Dibble's relationships with the young women, explaining that they had known him as a teacher since they were in seventh grade and that they had been manipulated over time by Dibble. In addition, Wuertz told the judge about the photographs in the unitards that Dibble had taken of E.S. and E.K. when they were students and that he was concerned about where those photographs were and how they were being used.

{¶ 13} Detective Wuertz again explained that he had referred to E.K. as a victim even though she was an adult when the incident described in the affidavit occurred because he believed that she had been manipulated by Dibble. To demonstrate how easily Dibble manipulated E.K., Wuertz relayed E.K.'s explanation for allowing Dibble to take naked pictures of her. Dibble had told E.K. that he wanted to teach her about internal power and that the only way to see the ultimate energy was to look at her vaginal area. But he said that because the power was so strong, he could not look at it directly for very long and that he needed photos so he could look at the photos longer and study them to see her internal energy. Wuertz explained that E.K. had trusted Dibble and did not believe that he would do anything to hurt her and that she did not think the photos were sexual in nature.

{¶ 14} Detective Wuertz testified that he had not intended to mislead the judge who issued the search warrant. He explained that at the time he typed the search-warrant affidavit, he thought there was a chance that he could charge

Dibble with something related to his conduct with E.K., and he said that he still considers E.K. to be a victim.

{¶ 15} The trial court granted Dibble's motion to suppress evidence, finding that Wuertz had "knowingly and intentionally made false statements in his affidavit" and that without those statements, the affidavit did not support a finding of probable cause to search Dibble's home. The trial court declined to consider sworn oral statements made by Wuertz to the judge issuing the warrant when he submitted his search-warrant affidavit, since no record of any such statements had been made. The trial court then held that evidence outside the "false" affidavit standing alone was insufficient to support probable cause. The state appealed, and the Franklin County Court of Appeals affirmed the judgment of the trial court. The case is now before this court upon our acceptance of the state's discretionary appeal. *State v. Dibble,* 130 Ohio St.3d 1493, 2011-Ohio-6556, 958 N.E.2d 956.

**Law and Analysis**

{¶ 16} As a preliminary matter, both courts below concluded that the search-warrant affidavit in question failed to meet Crim.R. 41(C), which excludes consideration of unrecorded sworn oral information. The state contends that this finding compels us to hold that Crim.R. 41(C) is unconstitutional because the Fourth Amendment requires only that the information be given under oath or affirmation. However, we find that we need not reach the issue whether Crim.R. 41(C) is unconstitutional, because we find that the statements made by the detective were not false statements made intentionally or with reckless disregard for the truth. We are remanding this matter for a new hearing, which will now require the trial court to consider the affidavit on its face.

{¶ 17} Turning now to the issue of falsity in a search-warrant affidavit, in 1978, the United States Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

{¶ 18} This court set forth the analysis for determining whether a law-enforcement affiant intentionally or with a reckless disregard for the truth made a false statement in a search-warrant affidavit in *State v. Waddy*, 63 Ohio St.3d 424, 588 N.E.2d 819 (1992), where we noted that

> "[r]eckless disregard" means that the affiant had serious doubts of an allegation's truth. *United States v. Williams* (C.A.7, 1984), 737 F.2d 594, 602. Omissions count as false statements if "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." *United States v. Colkley* (C.A.4, 1990), 899 F.2d 297, 301.

*Id.* at 441.

{¶ 19} The focus of the trial and appellate courts in this case was on the detective's use of the word "victim" to describe E.K., the woman who was over 18 at the time of the sexual conduct alleged in the affidavit. According to Wuertz's testimony, however, he considered her to be a victim because Dibble's relationship with E.K. involved a pattern of grooming and manipulation that began when E.K. was a minor and a student of Dibble's. Although the affidavit indicated that the "inappropriate" touching of E.K. occurred after she graduated from high school, Wuertz testified that he had told the judge about the teacher-student relationship. It is therefore difficult to understand how the courts could have deemed the affidavit misleading, since it stated clearly that Victim #2 (E.K.) had graduated before the "inappropriate" touching began.

{¶ 20} However, the trial court found that the detective's use of the term "victim" to refer to E.K. amounted to knowingly and intentionally including false information in his search-warrant affidavit in order to establish probable cause to search Dibble's house. The court of appeals held that competent and credible evidence supported that finding. We disagree and conclude that the trial court used too narrow a definition of "victim" by viewing the term to encompass only victims of crime. We find this hypertechnical analysis inappropriate.

{¶ 21} The United States Supreme Court has explained that search-warrant affidavits are usually drafted by nonlawyers and should be reviewed with that in mind. *United States v. Ventresca*, 380 U.S. 102, 108-109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Citing *Ventresca*, the dissenting judge in this case reasoned as follows:

> Here, the trial court interpreted the term "victim" to mean, and only to mean, "a person who is the object of a crime." I conclude, however, that it was improper for the trial court to apply

8

such a limited definition. Specifically, it is improper for a court to invalidate warrants by interpreting the accompanying affidavits in a "hypertechnical" manner because the affidavits are drafted by nonlawyers in the midst and haste of a criminal investigation. *United States v. Ventresca* (1965), 380 U.S. 102, 108-109, 85 S.Ct. 741, 13 L.Ed.2d 684.

Used more broadly, "victim" can mean (1) "a person who suffers from a destructive or injurious action," or (2) "a person who is deceived or cheated, as by his own emotions or ignorance, by the dishonesty of others, or by some impersonal agency." Webster's Encyclopedic Unabridged Dictionary (Random House 1997).

The trial court noted that few people "would argue with the notion that even minimal levels of manipulation and control exerted over young adult women by older men violate grounds of immorality and may create some measure of victimization." I agree. And, applying this characterization to what may have occurred between E.K. and appellee, an affiant could have reasonably concluded that E.K. was a "victim" under a definition broader than the one the court imposed. Therefore, the characterization of E.K. as a victim was not false, and the trial court erred by suppressing the evidence on that basis.

*State v. Dibble,* 195 Ohio App.3d 189, 2011-Ohio-3817, 959 N.E.2d 540, ¶ 57-59 (French, J., dissenting).

{¶ 22} We agree with the reasoning in Judge French's dissent. The validity of a search-warrant affidavit should not turn on the identifier that an officer selects when trying to protect a person's identity. The detective selected

"victim" as a generic term to describe the two women in the affidavit so as to not identify them by name. The trial court conceded that Dibble had created "some measure of victimization" with regard to E.K., but then went on to find that Wuertz had used the term "victim" in reference to E.K. to intentionally mislead the trial judge who reviewed the search-warrant affidavit.

**{¶ 23}** A court abuses its discretion when its ruling lacks a sound reasoning process. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**Conclusion**

**{¶ 24}** A determination whether information in a search-warrant affidavit is false must take into account the nontechnical language used by nonlawyers. As noted by the United States Supreme Court in *Ventresca*, 380 U.S. at 108, 85 S.Ct. 741, 13 L.Ed.2d 684:

> If the teachings of the [United States Supreme] Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

10

**{¶ 25}** In this case, Dibble allegedly sexually exploited two young women while employed as a teacher at their school. His alleged behavior with each, including back rubs behind closed doors, other inappropriate touching, and photographing both women in see-through unitards without any undergarments, if true, clearly made victims of these young women. Therefore, the detective's use of the term "victim" to refer to E.K., even though the sexual activity regarding E.K. that was described in the search-warrant affidavit occurred after she was 18 and had graduated, did not amount to his knowingly and intentionally including false information in his search-warrant affidavit.

**{¶ 26}** Since the trial judge's analysis of whether to suppress the evidence began with his conclusion that the detective's testimony was false and we have called into question his basis for that conclusion, we find that consideration of the other assignments of error, which relate to later determinations in the judge's analysis, would be premature. Consequently, we reverse the judgment of the court of appeals and remand this cause to the trial court to hold a new suppression hearing consistent with this opinion.

> Judgment reversed
> and cause remanded.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

**{¶ 27}** I would affirm the judgment of the court of appeals but would not adopt its reasoning.

**{¶ 28}** Whether Detective Wuertz knowingly made false statements in his affidavit is ultimately irrelevant. That is because any information about Dibble's relationship with E.K., a consenting adult, describes no crime, and thus provides

no basis for a search. There is no allegation in the affidavit that any illegal activity regarding Victim #1, E.S., took place in defendant's home. Detective Wuertz was asked at the suppression hearing about the importance of information about E.K. to the probable-cause determination:

{¶ 29} "Q. * * * And only the information from [E.K.] would be the probable cause basis to be able to search the home of Mr. Dibble, correct? At that point in time, detective, that's correct, is it not?

{¶ 30} "A. At that point in time."

{¶ 31} The detective, the trial court, and the court of appeals agreed that without the information regarding E.K., there was no probable cause to search Dibble's residence. Since there was no basis for including information about E.K. in the supporting affidavit, we need not expend further judicial resources to determine that there was no basis for the search in this case.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellant.

R. William Meeks Co., L.P.A., and David H. Thomas, for appellee.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, urging reversal on behalf of amicus curiae Ohio Prosecuting Attorneys Association.

Hunter, Carnahan, Shoub, Byard & Harshman, Russell E. Carnahan, and Robert M. Cody, urging reversal on behalf of amicus curiae Fraternal Order of Police, Capital City Lodge No. 9.

Jeanine Hummer, Upper Arlington City Attorney, and Tom Lindsey, Assistant City Attorney, urging reversal on behalf of amicus curiae city of Upper Arlington.

Timothy Young, Ohio Public Defender, and Stephen Goldmeier and Sarah G. LoPresti, Assistant Public Defenders, urging affirmance on behalf of amicus curiae Ohio Public Defender.

_____